1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   DAVID MICHAEL GRAVES,                    No. C 01-03502 SI

9              Plaintiff,                    **ORDER DENYING PETITION FOR WRIT
                                             OF HABEAS CORPUS AND GRANTING
10     v.                                    IN PART PETITIONER'S MOTION TO
                                             FILE THIRD AMENDED PETITION**
11   THOMAS CAREY, Warden

12              Defendant.
    _____/

13

14        On September 17, 2001, petitioner filed the instant petition for writ of habeas corpus,

15   challenging his convictions for murder and attempted murder.  Having considered the moving papers,

16   the Court DENIES the petition.  Petitioner has also filed a motion for reconsideration of this Court's

17   order denying his motion for leave to file a third amended petition.  The Court GRANTS IN PART

18   petitioner's motion for reconsideration.

19

20                              **BACKGROUND**

21        On May 20, 1996, petitioner David Michael Graves was convicted of the murder of Gary Tutt,

22   and on December 6, 1996, he was convicted of the attempted murder of Daniel McKinzie.  He is

23   currently serving consecutive prison sentences of 29 years to life for the attempted murder, followed

24   by a life sentence for the murder conviction.  Petitioner challenges both convictions in his habeas

25   petition, arguing that they were obtained in violation of the United States Constitution.

26

27

28

**United States District Court**
For the Northern District of California

**United States District Court**
*For the Northern District of California*

I.       **Factual Background**

A.       **Attempted Murder Conviction**

Petitioner's attempted murder conviction arose from a knife fight he had with Daniel McKinzie in front of McKinzie's Walnut Creek home at approximately 7 a.m. on October 11, 1994. During the fight, petitioner was stabbed twice in the stomach, while McKinzie suffered nine knife wounds, including a deep stab wound to the front of his torso and two serious stab wounds to his upper back. There were no witnesses to the beginning of the fight, although two of McKinzie's neighbors witnessed its end.

At trial, the parties presented dramatically different versions of how the fight began. According to the prosecution, petitioner hid on the side of McKinzie's house on the morning of October 11. When McKinzie left for work that morning, petitioner attacked him from behind with a knife, stabbing him numerous times before McKinzie was able to react. McKinzie called for help, and was able to fight petitioner off until his neighbors responded to his cries. In the process, McKinzie put petitioner in a headlock, drew his own knife, and stabbed petitioner twice in the stomach. Once the fight was broken up, petitioner ran off. Despite profuse bleeding, petitioner drove to a hospital in Martinez, rather than to a nearer hospital in Walnut Creek. At the hospital, he told police that he had been assaulted by two black men who tried to rob him. Petitioner's knife was later found on the roof of a building near McKinzie's home.

In his defense, petitioner claimed that the fight had actually been initiated by McKinzie, and that he had only drawn his knife in self defense. Petitioner testified that McKinzie had attacked him because McKinzie was angry that petitioner had spent the night with his ex-girlfriend Cindy a few years earlier. According to petitioner, he stopped by McKinzie's house on the way to work and waited for him on the sidewalk. When McKinzie emerged, he saw petitioner and said "What the fuck are you doing here?" When petitioner mentioned Cindy's name, McKinzie started punching him and throwing him around. At some point, McKinzie placed petitioner in a headlock and stabbed him twice. At that point, petitioner freed himself from the headlock, took out his own knife, and "started going back on him with mine." Respondent Exh. 4 at 3. Once the fight was broken up, petitioner fled the area and drove to a hospital in Martinez. He claimed that he drove to Martinez and lied to the police because he was afraid

2

1 | of getting in trouble.

2 | Petitioner was convicted of attempted murder after two trials.  The first jury found that he was

3 | guilty of attempted murder but was unable to determine if the attempted murder had been "willful,

4 | deliberate, and premeditated."  *See* Cal. Penal Code § 189 (defining first degree murder); Cal Penal

5 | Code § 664 (prescribing punishments for attempt crimes).  Petitioner was then retried only on the

6 | premeditation allegation, which the second jury found to be present.[1]

### B.    Murder Conviction

Petitioner's murder conviction arose from the death of Gary Tutt, who was shot to death on the front porch of Robert Howe's Walnut Creek home at approximately 11 a.m. on October 2, 1994.  At trial, the prosecution introduced evidence showing that Graves held a grudge against Tutt.  Graves and his ex-girlfriend, Kim Bates, had gotten in a fight because Graves believed she was cheating on him with Tutt.  According to the prosecution witnesses, Graves arrived at Howe's property with Donnie Shivel, Phil Stott, Lisa Nash, and Nash's one-year-old son shortly before Tutt was shot.  Graves and Shivel entered the home while Stott, Nash, and her child stayed on the deck, where Tutt was sitting in a chair.  At some point Graves walked out on to the deck.  Although no one admitted to witnessing Graves shoot Tutt, Tutt was shot twice in the neck shortly after Graves left the house.  Stott testified that after Tutt was shot, he went to his car and found Graves sitting in his car with a gun.  Shivel testified that he had given Graves a .357 Magnum – which was consistent with the murder weapon – that morning, because Shivel was scared of violating his probation.

---

[1]Under the California Penal Code, attempted murder is generally punishable by "imprisonment in the state prison for five, seven, or nine years."  Cal. Penal Code § 664.  A conviction of "willful, deliberate, and premeditated murder," however, warrants "imprisonment in the state prison for life with the possibility of parole."  *Id.*  In *People v. Bright*, 12 Cal. 4th 652 (1996), the California Supreme Court held that § 664 did not create a separate offense of premeditated attempted murder.  Instead, it held that the increase in punishment for "willful, deliberate, and premeditated" attempted murder was "a penalty provision that prescribes an increase in punishment (a greater base term) for the offense of attempted murder."  *Id.* at 656-57.  Thus, the Court ruled that a defendant could be retried on the premeditation allegation following a conviction for attempted murder.  *Id.* at 657.

In *People v. Seel*, 34 Cal. 4th 535 (2004), the California Supreme Court revisited this holding in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  The court reversed *Bright* and held that the federal Double Jeopardy Clause bars retrial of the premeditation allegation when an earlier jury finds there to be insufficient evidence of premeditation.

United States District Court
For the Northern District of California

Petitioner's primary defense was that a person named Scott Casteel had committed the murder. According to defense witness William Barnhard, Casteel had confessed to him that he killed Tutt. Casteel's description of the murder, however, was inconsistent with a number of facts. Specifically, Barnhard testified that Casteel confessed to shooting Tutt through a pillow, in a bedroom, and that Tutt was Caucasian. According to Barnhard, Casteel had also told him that John Hinkley – often referred to as David Hinkley in petitioner's briefs – was present when Tutt was killed. Graves called Hinkley to the stand, but Hinkley refused to testify, asserting his Fifth Amendment privilege against self incrimination. Petitioner alleges that the prosecutor threatened to charge Hinkley with Tutt's murder if he testified at petitioner's trial.

## II.    Procedural History

Petitioner's convictions were affirmed on direct appeal by the California Court of Appeal on January 22, 1999, and the California Supreme Court denied his petition for review on May 12, 1999. Respondent Exh. 4, 6.[2] On April 25, 2000, petitioner filed two habeas petitions with the superior court. These were denied on October 2, 2000. Petitioner appealed both decisions to the appellate court, which consolidated the petitions and denied both in a one-sentence decision dated January 12, 2001. Petitioner then filed his habeas petition with the California Supreme Court on March 6, 2001, which was denied on August 29, 2001.[3]

_____

[2]The record submitted by the state contains a copy of the appellate court's decision that is missing pages 7-9. *See* Respondent Exh. 4. Petitioner's Supreme Court brief, however, has a complete version of the appellate decision attached. *See* Respondent Exh. 5.

[3]Likely because the California appellate court consolidated his two habeas petitions into a single case, petitioner filed his habeas petitions with the California Supreme Court under a single case number, S095731. This departure from his ordinary practice of filing both briefs under separate case numbers led to some confusion in a prior order of this Court. In its previous order granting respondent's motion to dismiss, the Court stated that Graves had only presented his attempted murder habeas petition to the California Supreme Court, and that his murder habeas petition did not appear in the California Supreme Court's files. It appears that this was incorrect. Respondent's latest filings include a copy of Graves's murder habeas petition, file stamped with the same file number, S095731, as his attempted murder petition, making it clear that the California Supreme Court accepted Graves's habeas brief related to his murder conviction.

Thus, it appears that both briefs were actually filed with the California Supreme Court under the same case number. As the California Supreme Court's decision does not indicate otherwise, this Court will assume that the California Supreme Court considered the issues raised by both petitioner's murder

United States District Court

For the Northern District of California

1    Graves filed the instant habeas petition with this Court on September 17, 2001.[4]  Because the

2    Court found that the petition contained unexhausted claims,[5] the Court dismissed the petition on July

3    25, 2002, and ordered petitioner to either delete his unexhausted claims or terminate the action and re-

4    file after exhausting all claims.  Petitioner then filed a motion to hold the case in abeyance to allow him

5    to exhaust his claims, which the Court granted on March 31, 2003, anticipating that petitioner would

6    file an amended petition containing all claims following exhaustion.

7    Graves filed a first amended petition on May 29, 2003.  Respondent filed a motion to dismiss,

8    which this Court denied on March 22, 2004.  The Court then ordered this case administratively closed

9    on June 10, 2004, until petitioner exhausted his unexhausted claims and moved to reopen.  Petitioner

10   then filed a new habeas petition containing many of his unexhausted claim with the California Supreme

11   Court, which that court denied on April 13, 2005.  Petitioner filed his second amended petition on May

12   10, 2005, and the Court reopened the case and allowed the amended petition on May 31, 2005.[6]

13

14   **III.    Claims in Second Amended Petition**

15   Graves's second amended petition makes several interrelated claims regarding ineffective

16   assistance of counsel and due process violations in all three trials and both appeals.  These claims are

17   as follows.

18

19   petition and his attempted murder petition when evaluating whether petitioner has exhausted his claims.

20   [4]As described in previous orders, Graves filed two separate habeas petitions which were later
     consolidated under case number 01-3502.

21

22   [5]The determination that Graves' federal habeas petition contained unexhausted claims was based
     on the mistaken belief that Graves had not presented the California Supreme Court with his state habeas

23   petition regarding his murder conviction.  With one exception, petitioner's counsel has chosen to
     voluntarily abandon many of the claims that this Court determined were unexhausted.  Because these

24   claims were voluntarily abandoned, the Court will not consider them here.  The single exception is
     petitioner's contention that the prosecution committed misconduct by threatening John Hinkley to

25   prevent him from testifying.  Petitioner has moved to raise this claim in a third amended petition, which
     the Court GRANTS below.

26   [6]Graves moved to file a third amended petition on July 1, 2005, seeking to raise additional
     arguments in light of the California Supreme Court's decision in *People v. Seel*, 34 Cal. 4th 535 (2004)

27   and in light of evidence, which petitioner claimed to be newly discovered, that the prosecution
     threatened John Hinkley to prevent him from testifying.  The Court denied petitioner's motion on

28   February 9, 2006.  Graves has moved for reconsideration of that order, which the Court addresses below.

United States District Court

For the Northern District of California

### A.      Claims Arising out of Attempted Murder Conviction

#### 1.      Trial Errors

Claim 1: The trial court violated petitioner's due process rights by accepting a verdict on the attempted murder charge in the first attempted murder trial despite the jury's inability to agree on whether the attempted murder was "willful, deliberate, and premeditated."

Claim 2: The trial court violated petitioner's due process rights by failing to *sua sponte* instruct the jury on imperfect self-defense.

Claim 3: The trial court violated petitioners' due process rights by instructing the jury on the limitations of self-defense.

#### 2.      Ineffective Assistance of Trial Counsel

Claim 4: Counsel at the first attempted murder trial failed to investigate and present evidence on self-defense or imperfect self-defense.

Claim 5: Counsel at the first attempted murder trial failed to request a jury instruction on imperfect self-defense.

Claim 6: Counsel at the second attempted murder trial failed to object that it was improper for Graves to be re-tried only on whether the murder attempt was willful, deliberate, and premeditated instead of being re-tried on the entire charge.

#### 3.      Ineffective Assistance of Appellate Counsel

Claim 7: Appellate counsel failed to contend that it was improper for Graves to be re-tried on whether the murder attempt was willful, deliberate, and premeditated.

Claim 8: Appellate counsel failed to contend that counsel in the first trial was ineffective for failing to investigate and present evidence on self-defense.

Claim 9: Appellate counsel failed to contend that trial counsel was ineffective for failing to object to the retrial of the premeditation charge.

Claim 10: Appellate counsel failed to contend that the trial court's instruction on the limitations of self-defense violated due process.

Claim 11: Appellate counsel failed to contend that trial counsel was ineffective for failing to request an imperfect self-defense instruction.

Claim 12: Appellate counsel failed to contend that the trial court's failure to instruct on imperfect self-defense *sua sponte* constituted a due process violation.

### B.      Claims Arising out of Murder Conviction

#### 1.      Trial Errors

Claim 13: The trial court violated petitioner's due process rights by failing to adequately examine a key defense witness about his invocation of his Fifth Amendment privilege against self-incrimination.

Claim 14: The trial court violated petitioner's due process rights by giving an improper implied malice instruction.

### 2.    Ineffective Assistance of Trial Counsel

Claim 15: Trial counsel failed to object to the court's implied malice instruction.

Claim 16: Trial counsel failed to request an instruction on third-party liability.

### 3.    Ineffective Assistance of Appellate Counsel

Claim 17: Appellate counsel failed to argue that the trial court gave an improper implied malice instruction.

Claim 18:Appellate counsel failed to argue that trial court should have *sua sponte* instructed on third-party liability.

Claim 19: Appellate counsel failed to argue that the trial court inadequately examined a key defense witness about his refusal to testify based upon his Fifth Amendment privilege against self-incrimination.

## LEGAL STANDARD

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") governs a federal court's ability to grant habeas relief to a state prisoner. Before a state prisoner may bring a habeas petition in federal court, he must have exhausted all his claims in state court. *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). This is a requirement of "total exhaustion"; when a petitioner presents a "mixed petition," containing both exhausted and unexhausted claims, the district court may not grant the petition, even as to the unexhausted claims. *See Rhines v. Weber*, 544 U.S. 269, 274 (2005) ("AEDPA preserved *Lundy's* total exhaustion requirement."). A district court may, however, dismiss unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Even when a claim is exhausted it may be procedurally barred. A procedural bar arises when a habeas petitioner's claim in state court was dismissed on a state law procedural ground, such as untimeliness. For a procedural bar to apply, the state law ground must be both independent of federal

United States District Court
For the Northern District of California

law and adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991) ("[A federal court] will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.").

Finally, when a federal court addresses a state prisoner's habeas claim on the merits, comity requires that its review be deferential to the state court's judgment. Thus, a federal court may only overturn a state court's judgment if it "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254.

**DISCUSSION**

Respondent claims that all of petitioner's claims are invalid and must be either dismissed or denied. Respondent raises three ground for dismissal of the petition.[7] First, respondent argues that a number of petitioner's claims remain unexhausted. Second, respondent argues that a number of petitioner's claims are subject to a procedural bar. Finally, respondent argues that the remaining claims have no merit.

**I.    Second Amended Petition**

As discussed above, the second amended petition contains nineteen different claims for relief. The Court considers each in turn.

**A.    Attempted Murder Claims**

**1.    Claim 1 – Due Process Violation**

Petitioner's first claim asserts a due process violation arising from the first trial court's

---

[7]Respondent also argues that the second amended petition should be dismissed because it is improperly verified and that many of the claims in the second amended petition are barred by the statute of limitations. Because the Court rejects all the claims in the second amended petition on other grounds it does not reach these arguments.

United States District Court

For the Northern District of California

1  acceptance of the attempted murder verdict despite the jury's inability to determine the degree.

2  Petitioner argues that he was therefore convicted of "first degree" attempted murder without the jury

3  determining his guilt of every element of the crime.

4      As an initial matter, this claim was never presented to the California Supreme Court.  This

5  precise claim does not appear in either his direct appeal of his conviction or his state habeas petitions.

6  While a closely related claim appears in petitioner's 2001 petition to the California Supreme Court, it

7  is not sufficient to exhaust his current claim.  In his 2001 petition, petitioner argued that the Double

8  Jeopardy Clause barred his second retrial.  In his current petition, he argues that the retrial violated his

9  Fifth Amendment due process right to have his conviction "rest upon a jury determination that [he] is

10  guilty of every element of the crime with which he is charged, beyond a reasonable doubt."  *United*

11  *States v. Gaudin*, 515 U.S. 506, 510 (1995).  These are not the same claims.  A habeas claim must

12  reference a "specific federal constitutional guarantee," *Gray*, 518 U.S. at 162-63, and the "specific

13  federal constitutional guarantee" referenced in petitioner's state petition is clearly different from the

14  guarantee referenced here.  Accordingly, the Court finds that the California courts have never had the

15  chance to address this claim.[8]

16      Despite the potential lack of exhaustion, the Court denies this claim on the merits.  *See* 28 U.S.C.

17  § 2254 (b)(2).  Claim 10 is based upon the undoubtedly correct proposition that a criminal defendant

18  has the right to have a jury determine his guilt or innocence of all elements of the offense.  *See In re*

19  *Winship*, 397 U.S. 358, 364 (1970) ("[W]e explicitly hold that the Due Process Clause protects the

20  accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to

21  constitute the crime with which he is charged."); *Stanton v. Benzler*, 146 F.3d 726, 728 (9th Cir. 1998)

22  ("[D]ue process requires that the jury be instructed on each element and find each element beyond a

23  reasonable doubt before it can convict.").  Here, however, that right was fully accommodated by the

24  California trial court because at the time Graves was convicted the California Supreme Court had

25

26      [8]Despite the fact that petitioner has not yet brought this claim before the California courts, it may

27  nonetheless be exhausted.  If the untimeliness bar that the California Supreme Court applied to petitioner's 2004 petition would clearly apply to any successive petition, then petitioner has exhausted his state court remedies.  *See Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004); *Harmon v. Ryan*, 959

28  F.2d 1457, 1460 (9th Cir. 1992).

United States District Court
For the Northern District of California

explicitly held that the "willful, deliberate, and premeditated" allegation was a penalty provision, not an element of attempted murder. *See People v. Bright*, 12 Cal. 4th 652, 656-57 (1996) ("We conclude that the provision in section 664, subdivision (a), imposing a greater punishment for an attempt to commit a murder that is 'willful, deliberate, and premeditated' does not create a greater degree of attempted murder but, rather, constitutes a penalty provision that prescribes an increase in punishment (a greater base term) for the offense of attempted murder."). This Court may not review California's interpretation of its own statutes, including its determination of the elements of a criminal offense. *See Stanton*, 146 F.3d at 728 ("This state-law determination – that arsenic trioxide is a poison as a matter of law and is not an element of the offense to be decided by the jury – is not open to challenge on habeas review."). Accordingly, petitioner's conviction was obtained through a jury finding that he was guilty of all elements of the crime of attempted murder.

To the extent Graves argues that the premeditation allegation may not constitutionally be defined as a penalty provision, but must constitute an element of the offense, his argument also fails. Presumably Graves would base such an argument on the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny, although he does not cite any of those cases in his brief. *Apprendi* stand for the proposition that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490; *see also Blakely v. Washington*, 542 U.S. 296 (2004). *Apprendi* and the cases that have followed it have not, however, been made retroactive by the Supreme Court.[9] *See Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1245-46 (9th Cir. 2005) (reaffirming prior holding that "*Apprendi* is not retroactive"). As Graves's conviction became final in 1999, over a year before *Apprendi* was decided, he cannot prevail on his argument that the premeditation allegation was

---

[9]As the Supreme Court described in *Beard v. Banks*, 542 U.S. 406, 411 (2004), evaluation of the merits of a habeas petition is conducted in light of the legal landscape as it existed at the time of the petitioner's conviction. Only two exceptions to this "nonretroactivity" rule exist. "First, the bar does not apply to rules forbidding punishment 'of certain primary conduct [or to] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Id.*; *see, e.g.*, *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989) (rules prohibiting the application of the death penalty to certain classes of defendants fall under first exception). "The second exception is for 'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" *Banks*, 542 U.S. at 411.

United States District Court

For the Northern District of California

1    an element of the offense.

2         Accordingly the Court rejects petitioner's first claim for relief.

3

4                    **2.      Claim 2 – Due Process Violation**

5         Petitioner's second claim asserts that his due process rights were violated by the trial court's

6    failure to instruct on imperfect self defense.  Respondent argues that this claim, like many of petitioner's

7    claims, is procedurally barred.  The Court agrees.  Petitioner's second claim was raised for the first time

8    in  petitioner's state habeas petition that was filed on May 13, 2004, more than five years after

9    petitioner's convictions became final.  The California Supreme Court denied that petition in a single

10   sentence order: "Petition for writ of habeas corpus is DENIED.  (See *In re Clark* (1993) 5 Cal.4th 750;

11   *In re Robbins* (1998) 18 Cal.4th 770, 780)."  *See* Respondent Exh. 12.

12        A federal court may not "review a question of federal law decided by a state court if the decision

13   of that court rests on a state law ground that is independent of the federal question and adequate to

14   support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  "For a state procedural rule

15   to be 'independent,' the state law basis for the decision must not be interwoven with federal law."

16   *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003).  "To be deemed adequate, the state law ground

17   for decision must be well-established and consistently applied."  *Id.* at 583.

18        It is clear that the Supreme Court's order was based on an independent state law ground.  The

19   only reasonable interpretation of the California Supreme Court's summary denial and accompanying

20   citation to *Robbins* is that the California Supreme Court determined that petitioner's claim was

21   "substantially delayed" without good cause.[10] *Robbins*, 18 Cal. 4th at 780 (holding that petitioner bears

22   burden of establishing absence of substantial delay or good cause for the delay).  This represents an

23   independent state ground.  *See Bennett*, 322 F.3d at 581 ("[I]n *Robbins*, the California Supreme Court

24

-------------------------------------

25        [10]Petitioner argues that the citation to *Robbins* could signify that the California Supreme Court
     considered his petition on the merits, because the *Robbins* decision states: "A claim that is substantially
26   delayed without good cause, and hence is untimely, nevertheless will be entertained on the merits if the
     petitioner demonstrates . . . (ii) that the petitioner is actually innocent of the crime or crimes of which
27   he or she was convicted . . . ."  *Robbins*, 18 Cal. 4th at 780.  The Court disagrees; the only plausible
     reading of the California Supreme Court's citation to *Robbins* is that the petition was denied for
28   untimeliness.

**United States District Court**
For the Northern District of California

made clear that it would no longer consider federal law in denying a petition on untimeliness grounds.").

It is less clear whether the determination that a habeas petition was untimely constitutes an adequate state law ground. The Ninth Circuit addressed the issue in *Bennett* but was unable to reach a conclusion due to a lack of information on whether the untimeliness bar was consistently applied. *See Bennett*, 322 F.3d at 582-83. This Court must therefore attempt to determine if California's timeliness requirements are well-established, and if California courts apply the untimeliness bar consistently.

Because procedural bar is an affirmative defense, the State of California bears the burden of proving adequacy. *Id.* at 586. This determination is governed by the Ninth Circuit's burden-shifting approach:

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id.* at 584-85 (largely adopting Tenth Circuit's rule from *Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1996)).

The Court finds that the state has met its "exceedingly modest" burden of pleading that the procedural bar applies. *See Dennis v. Brown*, 361 F. Supp. 2d 1124, 1130 (N.D. Cal. 2005). It has demonstrated that petitioner waited more than five years to bring the contested claims before the California Supreme Court, and that the California Supreme Court found all of those claims barred based upon untimeliness. The burden therefore shifts to petitioner to place the defense in issue.

Petitioner first argues that the standard for timeliness is too vague to be considered "well established." The Court disagrees. The lack of any precise definition of "substantial delay" is not fatal to the adequacy of the California rule. "Substantial delay" is a concept readily familiar to courts, which routinely make such determinations in the exercise of their discretion. And the fact that a rule encompasses discretion does not mean it is not well-established. *Wood v. Hall*, 130 F.3d 373, 376-77 (9th Cir. 1997) ("[J]udicial discretion may be applied consistently when it entails 'the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits.'") (quoting *Morales v. Calderon*, 85 F.3d 1387, 1392 (9th Cir. 1996)).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

Further, the California Supreme Court's decision in *Robbins* discussed the substantial delay concept in detail, providing guidance to assist lower courts in their determination. *See Robbins*, 18 Cal. 4th at 780-81.

Petitioner also asserts that the untimeliness bar is inconsistently applied.  He has made no attempt, however, to support this assertion.  The Ninth Circuit's position is clear that a petitioner must make "specific factual allegations that demonstrate the inadequacy of the state procedural rule." *Bennett*, 322 F.3d at 584-85.  Petitioner's bare assertion, without more, is insufficient to place the adequacy of California's untimeliness bar at issue.

Accordingly the Court finds that petitioner's second claim is procedurally barred.

### 3.    Claim 3 – Due Process Violation

Petitioner's third claim asserts that the trial court violated his due process rights by instructing the jury on the limitations of self-defense.  This claim was first exhausted in petitioner's 2004 habeas petition.  Thus, respondent contends that the claim is procedurally barred.  For the reasons discussed above, the Court agrees.

### 4.    Claim 4 – Ineffective Assistance of Trial Counsel

Petitioner's fourth claim is that he received ineffective representation from his trial counsel at his first attempted murder trial.  He claims that his lawyer at his first trial, William Veale, did not investigate or introduce adequate evidence to support his claim that he acted in self defense.  The state argues that this claim has not been exhausted and that it is not meritorious.

Respondent claims that petitioner has not exhausted this claim because petitioner did not present to the state court the argument that Veale failed to investigate and present evidence on imperfect self defense.  Self defense and imperfect self defense differ only in that the latter covers situations in which a person unreasonably believes there to be a threat that he must defend against. *See In re Christian S.*, 7 Cal. 4th 768, 771 (1994) ("Under the doctrine of imperfect self-defense, when the trier of fact finds that a defendant killed another person because the defendant *actually* but unreasonably, believed he was in imminent danger of death or great bodily injury, the defendant is deemed to have acted without

United States District Court

For the Northern District of California

1    malice and thus can be convicted of no crime greater than voluntary manslaughter.") (emphasis in

2    original).  Here, petitioner's argument with respect to self defense and imperfect self defense are exactly

3    the same; the evidence that petitioner claims his trial counsel should have introduced is identical for

4    both legal theories.  Thus, the inclusion of imperfect self defense does not change petitioner's argument

5    in the slightest.  Accordingly, the Court finds that petitioner has exhausted this claim.

6          Respondent argues that petitioner cannot show ineffective assistance of counsel because his

7    counsel's challenged actions may have been strategic maneuvers.  "To prevail on a habeas claim of

8    ineffective assistance of counsel, Petitioner must establish both (1) that counsel's performance was so

9    deficient that it fell below an 'objective standard of reasonableness' and (2) that the deficient

10   performance rendered the results of his trial unreliable or fundamentally unfair." *Raley v. Ylst*, 444 F.3d

11   1085, 1090 (9th Cir.2006) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  Judicial

12   scrutiny of defense counsel's performance is deferential, and there is a strong presumption of adequate

13   assistance.  *Strickland*, 466 U.S. at 690.  In the habeas context, this standard is particularly demanding:

> For [a habeas petitioner] to succeed, however, he must do more than show that he would
> have satisfied *Strickland's* test if his claim were being analyzed in the first instance,
> because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in
> its independent judgment, the state-court decision applied *Strickland* incorrectly. . . .
> Rather, he must show that the [state court] applied *Strickland* to the facts of his case in
> an objectively unreasonable manner.

*Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per

curiam) ("Judicial review . . . is . . . doubly deferential when it is conducted through the lens of federal

habeas.").

21         Graves bases his ineffective assistance argument on the difference between the evidence

22   presented at his two attempted murder trials.  At his first trial, his counsel, William Veale, called only

23   Graves to testify in support of his claim of self defense.  Graves testified that McKinzie had attacked

24   him for no reason, that McKinzie had stabbed him first, and that Graves had only pulled out his knife

25   in self defense.  *See* Respondent Exh. 1 at 444-51.  Petitioner claims that Veale should have supported

26   his testimony with testimony from three witnesses that testified at his second attempted murder trial.

27         The first of these witnesses was Richard Kirkpatrick, who testified that he had been with

28   McKinzie the night before the stabbing, and that McKinzie had injected a half gram of

methamphetamine that evening. Respondent Exh. 3 at 435. The second witness, a psychologist named Stephen Pittel, built upon this testimony by testifying that a person who injected a half gram of methamphetamine would generally fall into the class of habitual users of that drug. *Id.* at 583, 588-589. He also testified to the side effects of methamphetamine, which include paranoia, volatility, and unpredictability. *Id.* at 585. Pittel opined that petitioner's description of McKinzie's unprovoked attack was consistent with the behavior of a person who uses large quantities of methamphetamine. *Id.* at 585-587. Finally, Elson, a "forensic anatomist," opined that McKinzie's injuries were more consistent with petitioner's description of the attack than McKinzie's. *Id.* at 618, 625. Specifically, he opined that the two stab wounds in the upper right portion of McKinzie's back were unlikely to have been inflicted from behind, because Graves is left handed. *Id.* at 625. Instead, Elson believed they were more likely to have been inflicted when Graves was facing McKinzie, as when McKinzie had Graves in a bear hug. *Id.* at 620-21. Elson also suggested that the stab wounds McKinzie suffered were sufficiently serious as to slow him down, suggesting that the wounds occurred at the end of the fight, rather than at the beginning. *Id.* at 622-23, 626.

The California Court of Appeal found that Veale had not been ineffective. It believed that the decision not to present the above witnesses may have been tactical because the witnesses opened the door to damaging testimony by prosecution witnesses. Pittel's testimony opened the door to evidence of Graves' violent character, while Elson's opinion highlighted the fact that McKinzie's injuries were far more severe than Graves's. Respondent Exh. 4 at 8-9.

While the defense in the first trial was spare, the Court cannot find the California Court of Appeal's decision to be unreasonable. Kirkpatrick's testimony, standing alone, was not particularly helpful for Graves without Pittel's testimony of the effects of methamphetamine use.[11] And the testimony of both Pittel and Elson had associated downsides. At the second trial, the trial judge specifically found that Pittel's testimony opened the door to testimony regarding an incident two years earlier in which Graves had been arrested for brandishing a gun in a supermarket. Respondent Exh. 3 at 670. And Elson not only admitted that McKinzie's injuries were far worse than Graves, but he

---

[11]In addition, as the California Appellate Court noted, there is no evidence that Veale was or should have been aware of Kirkpatrick at the first trial.

United States District Court
For the Northern District of California

testified to the nature of McKinzie's stab wounds in detail on cross examination.  *Id.* at 651, 640-48. Especially given that McKinzie was a relatively unsympathetic victim – at the first trial the prosecution freely admitted that he "may not be the kind of person you or I would have over for dinner" – Veale may have made the legitimate tactical decision to avoid introducing evidence that would have made McKinzie appear  more sympathetic to the jury.

Accordingly, the Court reject's petitioner's fourth claim for relief.

### 5.        Claim 5 – Ineffective Assistance of Trial Counsel

Petitioner's fifth claim asserts that counsel at the first attempted murder trial was ineffective for failing to request a jury instruction on imperfect self-defense.  This claim was first exhausted in petitioner's 2004 habeas petition.  Respondent therefore contends that the claim is procedurally barred. For the reasons discussed above, the Court agrees.

### 6.        Claim 6 – Ineffective Assistance of Trial Counsel

Claim 6 asserts that petitioner received ineffective assistance of counsel at his second trial because his counsel failed to argue that petitioner should be retried on the entire attempted murder charge instead of solely on the issue of premeditation.  The Court finds that this claim was never presented to the California Supreme Court.

As with petitioner's due process challenge to his conviction, a closely related claim appears in petitioner's 2001 petition to the California Supreme Court.  In that petition, however, petitioner argued that his counsel was ineffective for failing to argue that the Double Jeopardy Clause barred his second retrial.  His current claim is based upon his Fifth Amendment due process right to have all elements of his conviction decided by a jury.[12]  *See United States v. Gaudin*, 515 U.S. 506, 510 (1995).  As discussed above, a habeas claim must reference a "specific federal constitutional guarantee."  *Gray*, 518 U.S. at

---

[12]Petitioner does not explicitly describe his ineffectiveness claim in this fashion. The description comes from his underlying claim that his due process rights were violated by the retrial, discussed in section III.B of his second amended petition.  To the extent that petitioner's claim relies on the double jeopardy clause, as his state petition did, his claim is meritless because the jury did not acquit him of the premeditation allegation. *See People v. Seel*, 34 Cal. 4th 535, 550 (2004) (jury's inability to "make a finding on the premeditation allegation" does not trigger double jeopardy protections).

United States District Court

For the Northern District of California

162-63.  Here, while both his 2001 claim and his current claim stem from the Sixth Amendment right to counsel, they also incorporate the other constitutional provisions on which the ineffectiveness claim is based.  *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. Thus, . . . respondent's defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim . . . .").  Because petitioner's current ineffectiveness claim relies on the Due Process Clause, it is based on a different constitutional provision than the ineffectiveness claim based on the Double Jeopardy Clause that he presented to the state courts.[13]  Accordingly the Court finds that this claim is not exhausted.

Even if petitioner's claim were exhausted, the Court finds that it should be denied on the merits. At the time Graves was convicted of attempted murder the California Supreme Court had clearly approved the procedure of retrying whether an attempted murder was "willful, deliberate, or premeditated." *See Bright*, 12 Cal. 4th at 656-57.  Petitioner makes no argument as to how his counsel's failure to challenge this California Supreme Court holding rises to the level of ineffective assistance. *See, e.g.*, *Sistrunk v. Vaughn*, 96 F.3d 666, 670-71 (3d Cir. 1996) ("[T]here is no general duty on the part of defense counsel to anticipate changes in the law.").

Accordingly, the Court rejects petitioner's sixth claim for relief.

### 7.     Claim 7 - Ineffective Assistance of Appellate Counsel

Petitioner's seventh claim asserts that his appellate counsel was ineffective for failing to argue on appeal that "the trial court was required to set the degree [of attempted murder] as second degree" when the first jury was unable to determine whether the attempted murder was premeditated.

---

[13]In addition, allowing petitioner to proceed on his ineffectiveness claim would produce the somewhat anomalous result that his underlying due process claim would be unexhausted, while his parallel ineffectiveness claim would be exhausted.

United States District Court

For the Northern District of California

Respondent concedes that this claim was exhausted in 2004,[14] but argues that the claim is procedurally barred. For the reasons discussed above, the Court agrees.

### 8.      Claim 8 – Ineffective Assistance of Appellate Counsel

Claim 8 asserts that petitioner's appellate counsel was ineffective for failing to argue on appeal that petitioner's trial counsel rendered ineffective assistance by failing to investigate and present evidence on self defense. The record reveals, however, that petitioner's appellate counsel raised this argument on direct appeal. Respondent Exh. 5. Thus, the claim fails on the merits.

### 9.      Claim 9 – Ineffective Assistance of Appellate Counsel

Petitioner's ninth claim asserts that his appellate counsel was ineffective for failing to argue that his trial counsel should have objected to the retrial procedure used with petitioner's attempted murder conviction. This claim was not presented to the California Supreme Court on direct appeal or in any of petitioner's habeas petitions.[15] Accordingly, the Court finds that the claim has not been exhausted.

In addition, this claim fails on the merits. At the time of his appeal, the California Supreme Court had clearly approved the procedure utilized by the trial court of retrying only whether the attempted murder was "willful, deliberate, or premeditated." *See Bright*, 12 Cal. 4th at 656-57. Thus, his appellate counsel's failure to raise this argument does not rise to the level of ineffective assistance. *See Sistrunk*, 96 F.3d at 670-71.

Accordingly, the Court rejects petitioner's ninth claim for relief.

### 10.      Claim 10 – Ineffective Assistance of Appellate Counsel

Claim 10 asserts that petitioner's appellate counsel was ineffective for failing to contend that the

---

[14]Petitioner raised a similar claim of ineffective assistance of appellate counsel in his 2001 state habeas petition. That claim, however, was based upon the Double Jeopardy Clause, not petitioner's due process rights. For the reasons discussed above, the Court finds that petitioner's 2001 petition did not include the same claim as he presents here.

[15]Graves raised a similar ineffective assistance of appellate counsel argument in his 2001 habeas petition. That argument, however, was linked to the Double Jeopardy Clause, not the Due Process Clause. For the reasons discussed above, the Court finds that those claims are not the same.

United States District Court
For the Northern District of California

trial court's instruction on the limitations of self-defense violated due process.  Respondent concedes that this claim was exhausted in 2004, but argues that the claim is procedurally barred.  For the reasons discussed above, the Court agrees.

### 11.    Claim 11 – Ineffective Assistance of Appellate Counsel

Claim 11 asserts that petitioner's appellate counsel was ineffective for failing to contend that trial counsel was ineffective for failing to request an instruction on imperfect self defense.  Respondent concedes that this claim was exhausted in 2004, but argues that the claim is procedurally barred.  For the reasons discussed above, the Court agrees.

### 12.    Claim 12 – Ineffective Assistance of Appellate Counsel

Claim 12 asserts that petitioner's appellate counsel was ineffective for failing to contend that the trial court had a duty to instruct *sua sponte* on imperfect self defense.  Respondent concedes that this claim was exhausted in 2004, but argues that the claim is procedurally barred.  For the reasons discussed above, the Court agrees.

### B.    Murder Claims

Petitioner also raises seven additional habeas challenges to his murder conviction.  All of these claims, however, were first raised in his 2004 state habeas petition.  Thus, for the reasons discussed above, the Court finds that they are procedurally barred.

## II.    Third Amended Petition

Petitioner filed a motion to file a third amended petition on July 1, 2005.  On February 9, 2006, this Court denied the motion.  Petitioner has since filed a motion for reconsideration of the Court's ruling.  For the following reasons, the Court GRANTS IN PART petitioner's motion.

Petitioner's proposed third amended petition raises three new claims.  The first two relate to the trial court's failure to instruct the first attempted murder jury on "second degree attempted murder."

19

United States District Court

For the Northern District of California

The Court continues to believe that its ruling was correct and therefore DENIES petitioner's motion as to those claims.

Petitioner's third claim is more complicated.  The claim alleges that the prosecutor in petitioner's murder trial committed misconduct by threatening John Hinkley, a defense witness who would have testified that Scott Casteel confessed to murdering Gary Tutt.  The Court refused to allow petitioner to raise this claim because it found that the claim was barred by the statute of limitations.  Having now obtained a more complete understanding of the complicated procedural history of this case, the Court feels it must revisit its holding and GRANT petitioner's motion as to this claim.

As discussed above, petitioner first raised this claim with this Court in his *pro se* habeas petition filed in 2001.[16]  The Court, however, erroneously found that Graves had not appealed his state habeas petition related to his murder conviction to the California Supreme Court, and therefore found that all of his claims related to his murder conviction were unexhausted.  Petitioner, through counsel, thereafter submitted a first amended petition, which did not contain the claim of prosecutorial misconduct.  Had the Court not held the erroneous understanding that petitioner's murder claims were unexhausted, it would have been able to reach the claim on the merits.  Given this mistake the Court believes it must allow Graves the opportunity to raise this claim again.

Accordingly, the Court GRANTS petitioner's motion to file a third amended petition as to the claim of prosecutorial misconduct.  **Graves must file his third amended petition within 30 days of this order.**

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES Graves' second amended petition, but GRANTS IN PART petitioner's motion to file a third amended petition.

---

[16]Thus, the Court is somewhat puzzled by petitioner's counsel's strong protestations that this claim should not be barred by the statute of limitations because it is a newly discovered claim.

**United States District Court**
For the Northern District of California

1   **Petitioner must file a third amended petition raising only the prosecutorial misconduct claim**

2   **within thirty days of this order or the Court will issue judgment in favor of California.**

3

4       **IT IS SO ORDERED.**

5

6   Dated: August 9, 2006

7                                                                SUSAN ILLSTON
                                                                 United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28